**FILED**

2008 Jul-31 AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

　　　　Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

　　　　Defendants.

_____/

## NOTICE OF REMOVAL

To the Judges of the United States District
Court for the Northern District of Alabama:

　　　Defendants Global Asset Management, Inc. ("GAM") and Mark Modist ("Modist")

hereby give notice that the pending civil action styled *Corey King v. Barron Trading Group,*

*Inc., et al.*, In the Circuit Court of Talladega County, Alabama, Case No. CV2008-262WEH, has

been removed to the United States District Court for the Northern District of Alabama, Eastern

Division.[1]  This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1) and 28

U.S.C. § 1331, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a), and this action

may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

---

　　　[1] By removing this proceeding, defendants GAM and Modist do not waive, and shall not
be deemed to have waived, any rights to compel arbitration, objections to jurisdiction, or any
other defenses, all of which are expressly reserved.

## MEMORANDUM OF LAW

1.     **The Initial Pleading**.  On or about June 23, 2008, plaintiff Corey King filed a Complaint in the Circuit Court of Talladega County, Alabama.  A copy of the Complaint is attached hereto as Exhibit A.  It is that Complaint (which, for purposes of 28 U.S.C. § 1446(b), purports to set forth a claim for relief) that GAM and Modist remove to this Court.  According to the summons, a copy of the Complaint was mailed to GAM on July 1, 2008.  A copy of the summons to GAM is attached hereto as Exhibit B.

2.     **The Bases for Removal**.  This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1331, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a).

        a.     **Diversity**.  This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1) because it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

                i.     **Complete Diversity Exists**.  Plaintiff is a citizen of the State of Alabama and defendants are all citizens of the State of Florida.

        According to the Complaint, plaintiff Corey King is a resident of Talladega County, Alabama and, accordingly, is a citizen of the State of Alabama.  *See* Complaint at ¶ 1.

        Defendant GAM is a corporation organized under the laws of the State of Florida and has its principal place of business in the State of Florida and, accordingly, is a citizen of the State of Florida.  *See* Complaint at ¶ 3;  *see* 2008 For Profit Corporation Annual Report for Global Asset Management, Inc., attached hereto as Exhibit C.

        Defendant Barron Trading Group, Inc. is a corporation organized under the laws of the State of Florida and has its principal place of business in the State of Florida and,

2

accordingly, is a citizen of the State of Florida. *See* Complaint at ¶ 2; *see* 2008 For Profit Corporation Annual Report for Barron Trading Group, Inc., attached hereto as Exhibit D.

According to the Complaint, defendants Rick Lutz, Mr. Sachero, Peter Lynn, Monty Myler, Lisa Myler and Mark Modist are individuals residing in the State of Florida and, accordingly, are citizens of the State of Florida. *See* Complaint at ¶¶ 4-9.

Because plaintiff is a citizen of the State of Alabama, and no defendant is a citizen of the State of Alabama, there is complete diversity of citizenship between the parties.

ii.    **The Requisite Amount In Controversy Is Satisfied.**  The amount in controversy with respect to the alleged claims against defendants exceeds the sum or value of $75,000, exclusive of interest and costs. According to the Complaint, plaintiff's alleged claims seek recovery of approximately $245,000 in alleged damages. *See* Complaint at ¶ 27 ("As a result of the Defendants' [allegedly] wrongful conduct, King lost almost $245,000 of his insurance proceeds.").

b.    **Federal Question**.  This Court also has original jurisdiction of this action under 28 U.S.C. § 1331 because the Complaint asserts an alleged claim against defendants that allegedly arises under the laws of the United States, namely the rules and regulations of the United States Commodities Futures Trading Commission ("CFTC"). *See* Complaint at ¶ 42. The CFTC's rules and regulations are codified at 17 C.F.R. § 1.1 *et seq*., and are promulgated under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq*.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) with respect to all other claims.

3.    **The Petition for Removal is Timely**.  According to the summons, the Complaint was served by mail to GAM on July 1, 2008. The Complaint was received by GAM on July 3,

2008. Thus, this notice of removal is timely filed within thirty (30) days as prescribed in 28 U.S.C. § 1446(b).

    4.    **Notice Has Been Given**. As required by 28 U.S.C. § 1446(d), GAM and Modist served this notice of removal on plaintiff's counsel on July __, 2008. GAM and Modist have also filed a copy of this notice of removal with the Clerk of the Circuit Court of Talladega County, Alabama. A copy of the notice of filing this notice of removal is attached hereto as Exhibit E.

    5.    **Consent to Removal**. To the best of GAM and Modist's knowledge, information and belief, none of the other defendants has been served with process as of the time this notice of removal is filed. Also, counsel for GAM and Modist contacted the Clerk of the Circuit Court of Talladega County, Alabama by telephone to inquire whether any other defendant has been served. The Circuit Court Clerk advised that, according to returns of service received by the Clerk, GAM is the only defendant that has been served in this action. Accordingly, it is not necessary for the other defendants to join in or consent to removal. *E.g., GMFS, LLC v. Bounds,* 275 F.Supp.2d 1350, 1354 & n.7 (S.D. Ala. 2003) ("a defendant that has not been served with process need not join in or consent to removal").

Respectfully submitted:

Counsel for Defendants Global Asset
Management, Inc. and Mark Modist

Of counsel:

Gregory C. Cook
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: 205-251-8100
Facsimile: 205-226-8798
gcook@balch.com

Peter W. Homer, Esq. [PRO HAC VICE MOTION TO BE FILED]
Homer Bonner, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
(305) 350-5100
(305) 372-2738 facsimile
phomer@homerbonnerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal was served this 29th day of July 2008 by facsimile ((205) 930-9054) before 5:00 p.m. and postage prepaid first class U.S. mail to:

Richard S. Frankowski, Esq.
Burke, Harvey & Frankowski, LLC
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, Alabama 35205
Fax: (205) 930-9054

By: _____

5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

      Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

      Defendants.

_____/

# EXHIBIT A TO
# NOTICE OF REMOVAL

## IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA

| | |
|---|---|
| COREY KING, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CV No.: **CV**2008 -262**W EH** |
| | ) |
| BARRON TRADING GROUP, INC., | ) |
| GLOBAL ASSET MANAGEMENT, | ) |
| INC., PETER LYNN, RICK LUTZ, | ) |
| MONTY MYLER, LISA MYLER, | ) |
| MARK MODIST and MR. | ) |
| SACHHERO, | ) |
| Defendants. | ) |

### COMPLAINT

### I.   INTRODUCTION

1.      Corey King is an individual over the age of 19 and is a resident of Talladega County, Alabama.

2.      Barron Trading Group, Inc. ("Barron") is an entity with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. Barron is not and has not been registered with the National Futures Association. Barron is not and has not been registered as a broker-dealer or investment adviser with Financial Industry Regulatory Authority.

3.      Global Asset Management, Inc. ("Global") is an entity with a last known mailing address of 1900 Glades Road, #355, Boca Raton, FL 33431. Global is not and has not been registered with the National Futures Association. Global is not and has not been registered as a broker-dealer or investment adviser with the Division.

4.      Rick Lutz is an individual with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. According to Lutz's business card, he

1

is a "Senior Account Executive" for Barron. Lutz is not and has not been registered with the National Futures Association. Lutz is not and has not been licensed as a securities agent or investment adviser representative with the Financial Industry Regulatory Authority.

5.    Mr. Sachero is an individual with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. Sachero is not and has not been registered with the National Futures Association. Sachero is not and has not been licensed as a securities agent or investment adviser representative with the Financial Industry Regulatory Authority.

6.    Peter Lynn is an individual with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. Lynn is not and has not been registered with the National Futures Association. Lynn is not and has not been licensed as a securities agent or investment adviser representative with the Financial Industry Regulatory Authority.

7.    Monty R. Myler is an individual with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. Mr. Myler is and was the President of Barron.

8.    Lisa Myler is an individual with a last known mailing address of 840 U.S. Highway One, Suite # 315, North Palm Beach, FL 33408. Mrs. Myler is and was the President of Barron.

9.    Mark Modist is an individual with a last known mailing address of 1900 Glades Road, #355, Boca Raton, FL 33431. Mr. Modist is and was the sole officer of Global.

## II.    FACTUAL BACKGROUND

2

10.   Barron is registered as a Florida corporation with the Florida Department of State and was incorporated on December 1, 2003. The president and registered agent for Barron are currently listed as Monty R. Myler.

11.   Global is registered as a Florida corporation with the Florida Department of State and was incorporated on July 24, 1996. The sole officer listed for the company is Mark Modist.

12.   Barron maintains a website at www.barrontradinggroup.com. According to its website, Barron describes itself as "an international leader in precious metals investing." Barron describes its customer relations by stating that: "Barron Trading Group is known for their dedication to customer service and satisfaction. Barron's success has been built from long and prosperous relationships with our Clients. As a result of our Clients' trust in Barron Trading Group, 85% of our business is repeat business and referrals. Located in North Palm Beach, Florida, Barron is home to an experienced staff committed to serving your precious metals investment needs."

13.   Barron describes its handling of precious metals purchased by customers as follows:

**Investment Flexibility**

**Through Barron Trading Group you can purchase metals for immediate personal delivery or arrange for convenient storage at an independent bank or depository. If you wish to finance your purchase, you can receive a loan for up to 80 percent of the value of your precious metals from Global Asset Management, a leading precious metals clearing firm and financing institution. If your purchase is financed, you can take personal delivery at any time without penalty by paying the balance of your loan. Of course, you can also sell your precious metals at any time with a simple phone call to your personal representative. Investment Security Through Personal Ownership A primary feature of the Barron Trading Group Account lies in the security it provides. When your purchase is financed or all cash for storage, all of the goods you ordered will be stored on your behalf at an independent bank or depository or you can take personal delivery at any**

3

time. You will receive title to precious metal delivered to the depository, giving you actual ownership. The books and records of the clearing firm will identify you as the owner until your metal is sold or you take personal delivery. The metal held for you is not an asset of Barron Trading Group, the bank or depository, and as such, the security of your metal does not depend on their individual or collective financial condition.

State-of-the-Art Equipment to Better Serve You

Our sophisticated electronic telephone system can process thousands of incoming toll-free calls each day. Once you've been assigned to an Account Representative, you will be able to call any time for updates on your account or current market conditions. Orders are executed immediately and you will receive immediate price confirmation. Trade confirmations are prepared and sent to you immediately by regular mail. Leading edge, high tech equipment allows us to efficiently process millions of dollars in transactions during each trading day.

(emphasis added)

14.     Corey King is an Alabama resident, and was born in April of 1974.  On or around December of 2002, King was involved in a work-place accident that left him paralyzed.  As a result of the injury, King received over $800,000.

15.     On or around January of 2007, Lutz from Barron called King and asked him to invest in precious metals with Barron.  Lutz told King that silver was a great investment that would appreciate.  King told Lutz that he was married, was confined to a wheelchair and had seven children and that he had to support his family.  Lutz told King that he had a friend in a wheelchair and that he understood the difficulties if placed on King.  Lutz then asked King to invest $250,000.00.  King told Lutz that $250,000.00 was outside of his comfort level and that he needed the insurance proceeds to live on.  Ultimately, Lutz convinced King to invest $9,100.00 in silver.  King told Lutz that he would have to withdraw the money to invest with Barron from an Ameriprise annuity.  Lutz told King that Barron would pay any surrender

4

charges for taking the money out. Lutz also told King that the silver he purchased would be kept
in a safe place and that King could get it at any time.

16.     Soon after speaking with Lutz, King received, via Federal Express, a Global Asset
Management, Inc. package that included a Customer Application, a Customer Account
Agreement, and an Appointment of Broker/Agent/Legal Representative. The Global Customer
Application failed to ask for any information regarding the investment objectives or risk
tolerance of the client. The Global Customer Application also failed to ask for the number of
years of investment experience the client had. There was no indication on the form that the
Global Customer Application was reviewed or approved by anyone at Barron. The Agreement
failed to adequately explain the risks involved with the use of margin in the customer's account.
King was not offered an opportunity to sign an Agreement that did not involve the use of margin
in the account. King never signed any of these documents.

17.     King also received from Barron a pamphlet regarding precious metal investing.
The pamphlet included pages entitled: "Precious Metals...The Best Capital Preservation
Hedge", "Gold...The Foundation of Wealth", and "Silver...Most Accommodating Coinage."
The pamphlet also included a page entitled: "For Our Mutual Protection." The page provided,
in part, the following:

> It is our policy that all orders for the purchase and sale of any precious metals will
> be confirmed with our compliance department.    Your account executive is
> required to service your needs and often will make recommendations to you. He
> is permitted to directly accept orders on your behalf. We are providing a method
> by which you control all trading decisions for your own account. W require that
> one of our compliance clerks as you a series of questions and obtain answers from
> you which assure us that you are aware of the nature of the transaction, the risks
> involved, the commissions charged, and other matters relative to your account....

....

5

18.     Soon after receiving the package of information about Global and Barron, King sent Barron $9,100.00. Shortly after King made the first investment, Lutz called back and stated that King had to send him $264,000.00 or Barron would have to freeze King's account. Lutz told King not to worry and said that he would make King one million dollars on top of his investment. Lutz also told King that within thirty to forty-five days, Lutz would get King back $100,000.00 of his principle.

19.     Apparently, Lutz opened a margin account for King, and in February of 2007, Lutz called and requested that King send in $12,000.00 to cover his margin account. King informed Lutz that he needed to build a house for his family and that he needed to purchase a $35,000.00 wheelchair. Lutz continued to ask for more money and King reluctantly sent the money to Barron based on Lutz's representations that he would get his money back.

20.     In April of 2007, Lutz called again and promised King that King's money was on the way, but that King needed to invest some more money. King refused to invest more at that time.

21.     In May of 2007, a Barron agent named Mr. Sachero called King and told King that he was Lutz's roommate and that Lutz was on leave. King explained that Lutz told him that his money was forthcoming. Sachero stated that half of King's position had been liquidated, but that he needed $49,000.00 to invest in gold for King. King sent Sachero the funds.

22.     As of May of 2007, King had invested approximately $334,000.00. Unbelievably, another Barron agent named Pete Lynn called on August 23 of 2007 and asked for another $33,000.00. King refused to send Barron anything.

23.     None of the Barron or Global agents ever asked King about his risk tolerance, investment objectives or income needs. Throughout King's relationship with Barron, Global and

their agents, King conveyed the fact that he was confined to a wheelchair and needed his insurance proceeds to live on. King also conveyed the fact that he was on numerous medications that were very expensive.

24.     Throughout King's relationship with Barron, Global and their agents, King never selected the types or quantities of his investments. King relied on the Defendants' expertise and all investments and purchases were recommended by Defendants. At no time did any of the Defendants explain the risk inherent in their recommendations and at no time did any of the Defendants explain the costs associated with King's purchases.

25.     At no time did any Barron or Global agent explain to King the risks of trading on margin. At no time did any Barron or Global agent explain how much exposure King would be exposed to by trading on margin.

26.     King's statements show that Barron purchased over $21,000 worth of silver with the $9,100.00 King initially invested. A 15% management fee was charged for this transaction. King's statements show that Barron purchased over $720,000.000 of silver with the $264,000.00 that King sent them. Barron charged King a $99,520.00 "trading fee" for this transaction. King's statements also show that Barron purchased almost $77,000.000 worth of silver with the $12,000.00 that King sent them.

27.     In late 2007, King liquidated his account and received $89,889.30. As a result of the Defendants' wrongful conduct, King lost almost $245,000.00 of his insurance proceeds.

28.     Barron, Global, Lutz, Sachero, Lynn, Myler and Modist have made misrepresentations and omissions of material fact to investor(s) including, but not limited to, the following:

     a.     misrepresented the investment risk(s) being taken by King on his purchase or sale of precious metals;

7

b.    misrepresented the returns being earned by King on his precious metals investments;

c.    misrepresented that Barron would arrange the storage of precious metal purchased by King at an independent bank or depository;

d.    misrepresented that precious metals were being stored in a depository on King's behalf;

e.    misrepresented that King would receive title to precious metal delivered to the depository, giving King actual ownership of the precious metal;

f.    misrepresented that King would receive a trade confirmation prepared and sent immediately by regular mail;

g.    misrepresented that King was receiving a market price for the purchase or sale of a precious metal;

h.    misrepresented the price of gold and silver that was being purchased or sold in King's account;

i.    misrepresented that margin had been authorized in the King's account;

j.    misrepresented that gold and silver was purchased and sold in King's account;

k.    failed to disclose to King the scope of the investor's risk;

l.    failed to disclose to King the total cost of a purchase of a precious metal or the total amount received from the sale of a precious metal;

m.    failed to disclose that margin would be used in King's account;

n.    failed to disclose a depository where precious metals would be stored;

o.    failed to disclose to King that they were not going to receive evidence that the required quantity of precious metals had been delivered to the depository and would be held by the depository on the purchaser's behalf; and

p.    failed to disclose to King that Barron, Global Lutz, Sachero, and Lynn were not registered with the Commodity Futures Trading Commission and/or the National Futures Association or any other regulatory body;

### III.    CAUSES OF ACTION

#### A.    Breach of Fiduciary Duty

8

29.     Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

30.     A professional and fiduciary relationship exists whenever confidence on one side results in superiority and influence on the other side, or when one side places special confidence in the other and such confidence is accepted, causing dependence by the one individual and influence by the other. *Bank of Red Bay v. King*, 482 So.2d 274, 284 (Ala.1985).

31.     Alabama courts have long recognized that a fiduciary duty exists where a person is in a position to "inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms." *Power Equipment Co., Inc. v. First Alabama Bank*, 585 So.2d 1291, 1297-1298 (Ala. 1991). *See also Bank of Red Bay v. King*, 482 So.2d 274, 284 (Ala.1985).

32.     Plaintiff reasonably relied on Defendants' representations. This reliance included Defendants' representation that Defendants would provide Plaintiff with experienced and competent investment professionals who would carefully invest their savings in a manner consistent with their goals and financial circumstances. Plaintiff reasonably relied on Defendants when he entrusted them with his money. Defendants willingly assumed the role of fiduciary by taking control over Plaintiff's money, and as such, Defendants are liable for breach of fiduciary duties and responsibilities, and the resulting damages.

33.     Defendants had a duty to preserve and protect the principal balance of Plaintiff's investment. Defendants knew and clearly understood that they had this duty. The loss of principal is something that a firm like Defendants can easily manage, provided Defendants and

9

its employees fulfill their normal duties.  Defendants' breach of duty to act in Plaintiff's best
interest, by failing to provide proper and correct investment advice, resulted in substantial losses
for which Defendants are wholly liable.

### B.    Unsuitability

34.    Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

35.    It is fraudulent, dishonest, and unethical to recommend "the purchase, sale or
exchange of any security without reasonable grounds to believe that the recommendation is
suitable for the client on the basis of information furnished by the client after reasonable inquiry
concerning the client's investment objectives, financial situation and needs, and any other
information known or acquired by the adviser after reasonable examination of the client's
financial records." 21 ALA. ADMIN. CODE R. 830-X-3.21(1)(a) (2003).

36.    Without evaluating Plaintiff's understanding of the risks or educating Plaintiff
about alterative investments, Defendants placed Plaintiff's funds in unsuitable investments.

37.    Defendants had a duty to properly inquire into Plaintiff's background before
recommending high-risk, precious metals and the use of margin.  Instead of fulfilling this duty,
Defendants recommended unsuitable investments.  The recommendations did not reflect
Plaintiff's financial situation, needs, and investment objectives.  As a direct result, Plaintiff
suffered financial damages for which Defendants are wholly liable.

### C.    Failure to Supervise

38.    Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

39.    Defendants had a duty to supervise their employees or face disciplinary action for
failing to do so.

40.    Defendants could have and should have prevented the abusive practices occurring
in Plaintiff's accounts, as the abusive practices were committed by their own agents and

employees; instead, Defendants did nothing to prevent the pattern of abuse. Therefore, Defendants are liable for its failure to protect a customer's accounts from misconduct.

### D.      Violations of Commodities Regulatory Rules

41.      Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

42.      Defendants violated the rules and regulations of the U.S. Commodities Futures Trading Commission, the National Futures Association Commission, and other self-regulatory bodies. Plaintiff, therefore, seeks relief for Defendants' acts, which include misrepresentations, failure to properly exercise supervision, failure to maintain proper supervisory procedures, failure to keep informed of the activities of its agents and employees, and other violations pertaining to fair practice and just and equitable principles of trade. The aforementioned acts resulted in damages to Plaintiff.

### E.      Violations of Alabama Securities Act

43.      Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

44.      Alabama Code § 8-6-17 provides that it is unlawful for any person, in connection with the offer, sale, or purchase of any security, to directly or indirectly: (1) employ any scheme device or artifice to defraud; (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, under the circumstances when made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. It is also a violation of Ala. Admin Code R.830-x-3.21(1)(a) to sell securities to any person that are unsuitable, given that person's objectives and financial situation.

45.      Under the Alabama Securities Act, the person buying the security is entitled to recover the consideration paid for the security, with interest at six percent per year from the date of payment. Ala. Code Section 8-6-19(a)(2) (2003). The statute also entitles the Plaintiff to

11

recover reasonable attorney's fees and costs. *Id.*

46.     Defendants violated the Alabama Securities Act, resulting in damages to Plaintiff. Therefore, Plaintiff requests all damages to which they are entitled under the statute.

### F.     Common Law Claims

### Fraud, Negligence, Intentional and Negligent Misrepresentation

47.     Plaintiff repeats and re-alleges all prior paragraphs as if set forth fully herein.

48.     Defendants are liable for the intentional and negligent misrepresentation of material facts upon which Defendants intended for Plaintiff to rely and upon which Plaintiff did rely, thereby causing their damages.

49.     Through its wrongful self-dealing actions, Defendants were unjustly enriched from Plaintiff's accounts.

50.     As described above, Defendants breached its duty to Plaintiff of good faith and fair dealing.

51.     As described above, Defendants intentionally, through gross negligence and with reckless disregard, harmed Plaintiff's investments.

52.     Defendants failed to properly execute their duties to the accounts and thus proximately caused substantial losses to Plaintiff. Defendants should be held liable to Plaintiff for damages, including loss of assets, lost opportunities, consequential losses, and injury to his property.

### V.     RESERVATION OF RIGHT TO AMEND

Plaintiff hereby reserves the right to amend this Complaint as information is acquired from Defendants and others.

### VI.     PRAYER FOR RELIEF

12

By reason of the foregoing, Plaintiff is entitled to be compensated for damages sustained as a direct, proximate, and consequential result of the acts, errors, and omissions of Defendants. Plaintiff prays that the Court order Defendants to pay damages, including, but not limited to:

A. All net out of pocket losses in the accounts;

B. All charges, including fees and commissions, to the accounts;

C. The lost earnings that the account would have earned if it had been properly invested;

D. Pre-judgment interest at the maximum statutory interest rate on all losses sustained from the date of the transactions until the date of the award by the Court pursuant to Alabama law;

E. Post-judgment interest at the maximum statutory interest rate;

F. Rescission of the investment purchases;

G. All costs of these proceedings, including forum fees, hearing session fees and costs in bringing this action to protect Plaintiff's rights and best interests;

H. Reasonable attorney fees in bringing this action under Alabama statutory law and common law. Plaintiff also requests costs and expenses including expert witness fees, in an amount to be determined at the trial; and

I. Punitive damages to be assessed by the Court to ensure the investing public that, in the future, Defendants and their financial consultants will conduct their affairs to the highest integrity required of financial advisors.

Date: June 19, 2008.

                                        Respectfully submitted,



                                        Richard S. Frankowski
                                        (ASB-1794-h70)
                                        *Attorney for Plaintiff*

13

**OF COUNSEL**
Burke, Harvey & Frankowski, LLC
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
TEL: 205-930-9091
FAX: 205-930-9054
rfrankowski@bhflegal.com

## JURY DEMAND

Plaintiffs here by request trial by struck jury in this cause of action on all claims so triable.



OF COUNSEL

## Please Serve the Following Defendants by Certified Mail:

Barron Trading Group
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

Global Asset Management, Inc.
1900 Glades Road
#355
Boca Raton, FL 33431

Rick Lutz
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

14

Mr. Sachero
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

Peter Lynn
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

Monty Myler
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

Lisa Myler
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

Mark Modist
840 U.S. Highway One
Suite 315
North Palm Beach, FL 33408

15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

     Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

     Defendants.

_____/

# EXHIBIT B TO
# NOTICE OF REMOVAL

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | Case Number<br>**CV2008 - 262 WEH** |
|---|---|---|

IN THE_____ Circuit _____ **COURT OF** _____ Talladega _____ **COUNTY**

**Plaintiff** _____ Corey King _____ v. **Defendant** Barron Trading Group, Inc., Global
_____ Asset Management, Inc., et al.

**NOTICE TO** _____ Global Asset Management, Inc. _____
_____ 1900 Glades Road, #355, Boca Raton, FL 33431 _____
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Richard S. Frankowski _____ WHOSE
ADDRESS IS _____ Burke, Harvey & Frankowski, LLC _____
_____ One Highland Place, 2151 Highland Avenue, Suite 120, Birmingham, AL 35205 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___ 30 ___ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:**

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[✓] Service by certified mail of this summons is initiated upon the written request of _____ Corey King
pursuant to the Alabama Rules of Civil Procedure.

Date ___ 7/1/08 ___                                    _____
                                                       Clerk/Register                              By: _____

[✓] Certified Mail is hereby requested.                _____
                                                       Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____
                                                                        (Date)
[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ _____ County,
Alabama on _____
        (Date)

_____
Date                                                   _____
                                                       Server's Signature

_____
Type of Process Server                                 _____
                                                       Address of Server
                                                       _____

                                                       _____
                                                       Phone Number of Server

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

       Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

       Defendants.

_____/

# EXHIBIT C TO
# NOTICE OF REMOVAL

# 2008 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
**Apr 29, 2008**
**Secretary of State**

DOCUMENT# P96000011422

**Entity Name:** GLOBAL ASSET MANAGEMENT, INC.

| **Current Principal Place of Business:** | **New Principal Place of Business:** |
|---|---|

1900 GLADES RD.
#355
BOCA RATON, FL  33431     US

| **Current Mailing Address:** | **New Mailing Address:** |
|---|---|

1900 GLADES RD.
#355
BOCA RATON, FL  33431     US

FEI Number: 65-0640704      FEI Number Applied For ( )      FEI Number Not Applicable ( )      Certificate of Status Desired (X)

| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |
|---|---|
| HOMER & BONNER, P.A., MARIE A. WHITES<br>1200 FOUR SEASONS TOWER<br>1441 BRICKELL AVENUE<br>MIAMI, FL  33131  US | HOMER & BONNER, P.A.,PETER HOMER<br>1200 FOUR SEASONS TOWER<br>1441 BRICKELL AVENUE<br>MIAMI, FL  33131  US |

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE:  PETER HOMER                                                      04/29/2008
_____                    _____
            Electronic Signature of Registered Agent                            Date

**Election Campaign Financing Trust Fund Contribution ( ).**

| **OFFICERS AND DIRECTORS:** | **ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:** |
|---|---|
| Title:        PDTS      ( ) Delete<br>Name:       MODIST, MARK<br>Address:    1900 GLADES RD., #355<br>City-St-Zip:  BOCA RATON, FL  33431 | Title:                ( ) Change  ( ) Addition<br>Name:<br>Address:<br>City-St-Zip: |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  MARK MODIST                                     PDTS          04/29/2008
_____                    _____
            Electronic Signature of Signing Officer or Director                      Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

     Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

     Defendants.

_____/

# EXHIBIT D TO
# NOTICE OF REMOVAL

# 2008 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
**Apr 17, 2008**
**Secretary of State**

DOCUMENT# P03000142367

**Entity Name:** BARRON TRADING GROUP, INC.

**Current Principal Place of Business:**

**New Principal Place of Business:**

840 US HWY ONE
SUITE 315
NORTH PALM BEACH, FL  33408

**Current Mailing Address:**

**New Mailing Address:**

840 US HWY ONE .
SUITE 315
NORTH PALM BEACH, FL  33408

FEI Number: 20-0435206    FEI Number Applied For ( )       FEI Number Not Applicable ( )    Certificate of Status Desired ( )

**Name and Address of Current Registered Agent:**

**Name and Address of New Registered Agent:**

MYLER, MONTY R
840 US HWY ONE
SUITE 315
NORTH PALM BEACH, FL  33408  US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                              Date

Election Campaign Financing Trust Fund Contribution ( ).

**OFFICERS AND DIRECTORS:**

**ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:**

| | | |
|---|---|---|
| Title: | PRES  ( ) Delete | |
| Name: | MYLER, MONTY R | |
| Address: | 840 US HWY ONE | |
| City-St-Zip: | NORTH PALM BEACH, FL  33403 | |

| | |
|---|---|
| Title: | ( ) Change ( ) Addition |
| Name: | |
| Address: | |
| City-St-Zip: | |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  MONTY R. MYLER                                    PRES              04/17/2008

Electronic Signature of Signing Officer or Director                          Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Eastern Division

CASE NO.

COREY KING,

      Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

      Defendants.

_____/

# EXHIBIT E TO
# NOTICE OF REMOVAL

IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA

CASE NO.:  CV2008-262WEH

COREY KING,

     Plaintiff,

vs.

BARRON TRADING GROUP, INC.,
GLOBAL ASSET MANAGEMENT, INC.,
PETER LYNN, RICK LUTZ,
MONTY MYLER, LISA MYLER,
MARK MODIST, and MR. SACHERO,

     Defendants.

_____/

## NOTICE OF FILING NOTICE OF REMOVAL TO U.S. DISTRICT COURT

To the Clerk of the Circuit Court of
Talladega County, Alabama, and All Parties:

     Defendants Global Asset Management, Inc. and Mark Modist hereby give notice of filing

a Notice of Removal of this action to the United States District Court for the Northern District of

Alabama, Eastern Division.  A copy of the Notice of Removal is attached hereto as Exhibit 1.

Respectfully submitted

_____
**Counsel for Defendants Global Asset**
**Management, Inc. and Mark Modist**

Of counsel:

Gregory C. Cook
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  205-251-8100
Facsimile:  205-226-8798
gcook@balch.com

1

Peter W. Homer, Esq. [PRO HAC VICE MOTION TO BE FILED]
Homer Bonner, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
(305) 350-5100
(305) 372-2738 facsimile
phomer@homerbonnerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing

Notice of Removal to U.S. District Court was served this 29th day of July 2008 by facsimile

((205) 930-9054) before 5:00 p.m. and postage prepaid first class U.S. mail to:

Richard S. Frankowski, Esq.
Burke, Harvey & Frankowski, LLC
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, Alabama 35205
Fax: (205) 930-9054

By:

2